

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00096-CR

The **STATE** of Texas,
Appellant

v.

Ryan Scott **MERENDINO**,
Appellee

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2018-05-13256-CR
Honorable Camile Glasscock Dubose, Judge Presiding[1]

Opinion by:    Beth Watkins, Justice

Sitting:       Patricia O. Alvarez, Justice
               Irene Rios, Justice
               Beth Watkins, Justice

Delivered and Filed: September 18, 2019

REVERSED AND REMANDED

The State appeals the trial court's order granting a motion to suppress filed by Ryan Scott Merendino. The motion challenged the seizure of Merendino's cell phone. The State contends the trial court erred in granting the motion because the cell phone was seized under the "plain view" exception to the warrant requirement. We reverse the trial court's order and remand the cause to the trial court for further proceedings.

---

[1] The Honorable H. Paul Canales presided over the suppression hearing and signed the order granting the motion to suppress.

## BACKGROUND

Merendino was indicted for seven counts of tampering with physical evidence for destroying a whitetail deer inventory and six durable identification tags assigned to whitetail deer. Merendino filed a motion to suppress evidence obtained from his cell phone asserting his cell phone was seized without a warrant or other lawful authority.[2] Two witnesses were called to testify at the suppression hearing.

Dean Fitzpatrick, a sergeant game warden with the Texas Parks and Wildlife Department, testified he is a peace officer responsible for enforcing Texas's laws with special emphasis on Texas's game and fish laws. Fitzpatrick testified he had a conversation with another game warden, Dennis Gazaway, who asked Fitzpatrick for his assistance on a case. In that conversation, Gazaway asked Fitzpatrick to interview Merendino and to seize Merendino's cell phone if it was in plain view during the interview. Gazaway told Fitzpatrick that the cell phone contained text messages between Merendino and other people who had been interviewed, and the text messages were evidence of criminal activity.

Fitzpatrick testified he arranged to meet Merendino at Merendino's office on November 1, 2017. Merendino was aware that his deer breeder operation was being investigated, and Fitzpatrick asked to meet with him to discuss the investigation. Merendino's attorney and another game warden were also present at the meeting. After Fitzpatrick gave Merendino's attorney permission to record the interview, Merendino placed his cell phone in front of Fitzpatrick in order to record the interview. At the end of the interview, Fitzpatrick informed Merendino and his attorney that the cell phone was being seized as evidence. Fitzpatrick also told Merendino and his attorney that a search warrant for the contents of the cell phone had been obtained. On cross-

---

[2] The State did not search the contents of the cell phone until after a search warrant was obtained; therefore, the motion to suppress was focused exclusively on the seizure of the cell phone.

examination, Fitzpatrick testified he believed the search warrant for the contents of the cell phone was already issued at the time he seized the cell phone; however, a copy of the search warrant and the affidavit for search warrant were admitted into evidence showing the search warrant was issued the day after Fitzpatrick seized the cell phone. On re-direct examination, Fitzpatrick testified Gazaway told him the search warrant was "drafted and ready to go."

Gazaway testified Merendino's cell phone was seized without a warrant because he had probable cause to believe the cell phone contained evidence that would further his investigation into Merendino's game violations. Gazaway also testified he told Fitzpatrick the cell phone contained incriminating information. Gazaway further testified he prepared the affidavit for search warrant and search warrant to authorize the search of the contents of the cell phone before Fitzpatrick met with Merendino. The affidavit for search warrant stated the affiant, Gazaway, believed Merendino's cell phone contained "evidence related to the crime of allowing the hunting or killing of a breeder deer or other captive white-tailed deer within a permitted facility." The affidavit also stated the contents of the cell phone belonging to another individual, Blaine Boudreaux, had been obtained which included messages between Boudreaux and Merendino's cell phone related to the crime. The affidavit further stated Merendino had used his cell phone to communicate with a credible cooperating source ("CS"). In that communication, Merendino ordered the CS "to take Boudreaux into the deer breeder facility to kill a white tailed deer" and further ordered the CS "to remove other breeder deer from the breeding facility so they [could] be hunted for financial gain." The affidavit stated Boudreaux admitted he killed a breeder deer inside the permitted breeder facility owned by Merendino at Labelleco Ranch, and the killing was approved by Merendino in response to a suggestion by a Labelleco Ranch employee "that the killing of the deer in the 'pin' would be beneficial to Labelleco."

In addition to the foregoing specific statements regarding Merendino, the affidavit generally stated that Gazaway knew from his training and experience that "those involved in the hunting of deer in a permitted facility commonly will take photographs of the animals that are sometime[s] sent to other individuals involved in this type of criminal activity." In addition, based on Gazaway's "training and experience with investigations involving the hunting of deer in a permitted facility," the affidavit stated "it is common for parties involved in these types of criminal activities, to keep information contained within their cellular phones, such as text messages, emails, call logs, photographs, videos, voice messages, contacts, and contact information."

In addition to the testimony of the game wardens and the search warrant affidavit, email correspondence between Merendino and the director of the deer breeder program with the Texas Parks and Wildlife Department was admitted into evidence. The correspondence established an investigation regarding the inventory of deer at Merendino's deer breeder facility has been ongoing since as early as August of 2016.

At the conclusion of the suppression hearing, the trial court granted Merendino's motion to suppress. The State appeals.

## STANDARD OF REVIEW

"In reviewing a motion to suppress, we apply a bifurcated standard of review." *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017). "[W]e give almost total deference to a trial court's determination of historical facts, and we review *de novo* the trial court's application of the law." *Luna v. State*, 268 S.W.3d 594, 602 (Tex. Crim. App. 2008).

## "PLAIN VIEW" SEIZURE

"In certain circumstances a warrantless seizure by police of an item that comes within plain view during their lawful presence in a private area may be reasonable under the Fourth Amendment." *Rodriguez*, 521 S.W.3d at 18. "For a plain-view seizure to be lawful, the officer

must have had lawful authority to be in the location from which he viewed the item, and the incriminating nature of the item must be immediately apparent."[3] *Id.* The second requirement is met if the officer has "probable cause to associate the item with criminal activity." *Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) (internal quotation mark omitted). Under the "collective knowledge" doctrine, when several officers are cooperating in an investigation, their cumulative information is considered in assessing probable cause. *See State v. Martinez*, 569 S.W.3d 621, 626-27 (Tex. Crim. App. 2019).

In this case, Fitzpatrick was invited to a meeting at Merendino's office where Merendino voluntarily placed his cell phone in front of Fitzpatrick. Therefore, Fitzpatrick had lawful authority to be in the location where he viewed Merendino's cell phone. In addition, the affidavit for search warrant established that based on his training and experience in investigations involving the hunting of deer in a permitted facility, Gazaway had probable cause to believe Merendino's cell phone would contain evidence of criminal activity. *Cf. King v. State*, No. 03-17-00276-CR, 2018 WL 5728765, at *5 (Tex. App.—Austin Nov. 2, 2018, pet. ref'd) (not designated for publication) (upholding plain view seizure of cell phone based on officer's testimony that the cellular telephones of people arrested for possessing large amounts of controlled substances will typically contain evidence of narcotics transactions). Furthermore, the game wardens' testimony at the suppression hearing coupled with the statements contained in the affidavit for search warrant establish that based on the cumulative information known to the game wardens, Fitzpatrick had probable cause to believe Merendino's cell phone contained evidence of a crime. Therefore, Fitzpatrick had "probable cause to associate the [cell phone] with criminal activity." *Miller*, 393

---

[3] In his brief, Merendino argues the State was also required to prove the discovery of the evidence was "inadvertent." In *Joseph v. State*, however, the Texas Court of Criminal Appeals recognized the United States Supreme Court had "eliminat[ed] the inadvertent discovery prong of the [plain view] analysis." 807 S.W.2d 303, 307 n. 3 (Tex. Crim. App. 1991).

S.W.3d at 266. Accordingly, the trial court erred in granting the motion to suppress because the plain-view seizure of the cell phone, which Fitzpatrick had probable cause to believe was associated with criminal activity, was lawful.

## CONCLUSION

The order of the trial court is reversed, and the cause is remanded to the trial court for further proceedings.

Beth Watkins, Justice

DO NOT PUBLISH